

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00615-CV

**IN THE INTEREST OF M.J.A.**, J.D.Z., and P.I.Z., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01056
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Patricia O. Alvarez, Justice
               Irene Rios, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: December 20, 2023

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her children, M.J.A., J.D.Z., and P.I.Z. (collectively, "the children").[1] Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interests. We affirm the trial court's termination order.

### BACKGROUND

The Department of Family and Protective Services ("the Department") initially became involved in the underlying case in July 2022 following allegations the children—who were one,

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother" and "Father" and we refer to the children using their initials or as "the children." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). Although the trial court's order terminates the parental rights of Mother and Father, only Mother appeals.

three, and six years old at the time—were wandering in the streets after they were left at home unattended. A neighbor called the San Antonio Police Department ("SAPD") to report the concern. After Mother arrived at the home, the responding officer arrested Mother and contacted the Department to take custody of the children. The children were hungry, did not have clothes that fit, and were generally unkempt when the Department's investigator arrived at the home.

On July 5, 2022, the Department filed a petition seeking emergency removal, temporary managing conservatorship of the children, and termination of Mother's parental rights. The trial court appointed the Department temporary managing conservator, and the children were ultimately placed with a foster family.

On June 7, 2023, the trial court held a bench trial. The trial court heard testimony from: Jessica Barrerra, the Department's investigator; Debra Pina, the Department's caseworker; Mother; Foster Mother;[2] and M.S., the CASA volunteer assigned to the case.

On June 15, 2023, the trial court signed an order terminating Mother's parental rights to the children. Specifically, the trial court terminated Mother's parental rights based on statutory grounds (D) and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (O). The trial court also found that it was in the children's best interests to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will

---

[2] To protect the identity of the children, we refer to the foster parents as "Foster Mother" and "Foster Father."

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate

finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

### BEST INTERESTS

In her sole issue, Mother challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the children's best interests.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in subsection 263.307(b) of the Texas Family Code.[3]

---

[3] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the

*See id.* § 263.307(b). We also consider the *Holley* factors.[4] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San

---

child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied)). "This court considers a parent's conduct before and after the Department's removal of the children." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied).

Further, a child's young age renders him vulnerable if left in the custody of a parent who is unable or unwilling to protect him or attend to his needs. *Id.* "A parent's inability to provide adequate care for a child, lack of parenting skills, and poor judgment may be considered when examining children's best interests." *In re K.A.D.K.*, No. 04-15-00758-CV, 2016 WL 1587535, at *6 (Tex. App.—San Antonio Apr. 20, 2016, pet. denied) (mem. op.).

Here, the trial court heard testimony that Mother left the children unattended at her home. *See S.J.R.-Z.*, 537 S.W.3d at 693. While Mother was away, the children were playing in the street. *See In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."). A neighbor contacted SAPD to report the unattended children. SAPD contacted Mother and she came home to meet the officers. The officers placed the children in one police car and Mother in another police car and contacted the Department to take custody of the children because they were placing Mother under arrest.

Jessica Barrera, the Department's investigator, testified the children appeared hungry and unkempt when she arrived at Mother's home on the day the children were removed. P.I.Z. did not have a shirt on and the other children were wearing clothes that did not properly fit. All three

children appeared dirty. According to Barrera, one child had a diaper that was tearing on the outside because it was so full of moisture. Barrera opined the diaper had not been changed in a long time because it was loose, dirty, and dripping. She also found a fire match in the diaper.

Barrera gave the children chips because they appeared to be hungry. Barrera stated the children ate the chips in a way that made her think the children had not eaten in a while. Mother claimed she had not been gone long and only left to go to the store to buy groceries for the children. However, Barrera could not establish a timeline because Mother's story was inconsistent. Barrera indicated that Mother's story regarding how long she had been gone did not line up with what M.J.A. told her. Barrera also opined that Mother was gone longer than an hour based on the children's appearance and how hungry they were when she arrived at the home. Barrera testified there was a "scent" in the home, and the home was messy.

Mother contradicted herself several times when she testified. At one point, Mother stated she never left the children home alone. She stated the neighbor called the police because the children were playing outside, and the neighbor did not see a vehicle in the driveway. Mother said the neighbor did not see a vehicle in the driveway because Mother does not own a vehicle, but she was there at the home while the children were playing outside. At another point in her testimony, Mother admitted she left to go to the grocery store but claimed she left the children with a friend who must have left them at the house. *See In re M.C.L. V*, No. 04-21-00277-CV, 2022 WL 219002, at *6 (Tex. App.—San Antonio Jan. 26, 2022, no pet.) (mem. op.) ("A parent endangers her children by accepting the endangering conduct of other people."). Then, Mother testified the friend took the children with him when he left the house. Yet, when SAPD arrived at the home, the children were alone, and the responding officers had to call Mother to ask her to come home. Mother arrived at the home with the friend who she claimed she entrusted to care for her children while she went to the grocery store. Mother also said the children were dirty and one child's diaper

was wet and loose because the children were playing with water outside. The trial court, as the factfinder, was entitled to disbelieve Mother's contradictory and self-serving testimony and could have found Barrera's testimony more credible regarding the events on the day of removal. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (mem. op.) (explaining a trial court could have disbelieved a parent's testimony and we defer to the factfinder on witness credibility issues).

Mother was arrested on the day the children were removed and remained in jail for the following nine months. "Criminal conduct, prior convictions, and incarceration affect[] a parent's life and [her] ability to parent, thereby subjecting [her] child[ren] to potential emotional and physical danger." *See In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.).

To address the Department's concerns with Mother's parental abilities, Mother was required to comply with her service plan. The service plan, which was admitted into evidence without objection, was made an order of the court in August 2022. Debra Pina, the Department's caseworker testified Mother has only completed four out of twelve parenting classes, she has attended only three counseling sessions, and she has not provided proof of stable employment or housing. When asked whether she completed her services and addressed the issues that brought the children into the Department's care, Mother responded she "is working on that." Mother stated she could not start her services because the service providers initially would not return her calls. However, Pina testified all the referrals were in place for Mother to engage in services when she was released from jail, there has never been a lapse in the referrals, and the service plan that was provided to Mother contained all the phone numbers to contact the service providers. Pina expressed to Mother when she was released from jail that "it was very important that she reach out to all [service] providers . . . with quick urgency[] because of the timeline." The trial court also

heard testimony that Mother could have taken parenting classes while in jail; however, Mother testified she "tried many times to take [parenting classes in jail], but they didn't call me."

Mother also failed to take a drug test. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at \*4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because [the parent] was using drugs."). Mother claims she could not take the drug test because she was not "in the system" and it would cost her $225 to take the test. Pina directly disputed this testimony. Pina testified the referrals were sent for Mother and the drug test would be free to Mother.

Mother testified she is currently looking for a permanent house and she "think[s]" she is going to get a house "in the next month[.]" Regarding employment, Mother only testified that she has a steady job. Mother never stated where she was employed, nor did she further elaborate on her current employment. According to Pina, Mother has not addressed the Department's concerns because she has not provided proof or shown she can maintain stable employment or housing, she has failed to drug test, and she has failed to complete her parenting classes. Pina opined it was in the children's best interests to terminate Mother's parental rights because the children deserve permanency and Mother has not been able to show that she can provide permanency for the children.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). "The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *S.J.R.-Z.*, 537 S.W.3d at 693.

The CASA volunteer also testified that termination is in the children's best interests because the children need permanency and a home where they can feel safe. Pina believes the

children can have permanency with their foster family. The children have been with their current foster family since November 2022. Pina testified: "The children appear very bonded with [the foster parents]. They hug, laugh, [and] play with them." Pina stated her opinion regarding the children's bond is based on her observations of the children's interactions with the foster parents. Pina testified the foster parents are currently meeting the children's needs and "are more than capable of meeting the children's [future] needs." To support her opinion, Pina testified the foster parents have provided for all three children's medical needs, they have the children engaged in extracurricular activities, they have properly addressed "deficits" and behavioral issues, and are willing to love and treat the children as their own children. Pina also testified the foster parents are advocating for the children academically, emotionally, and mentally.

The children were very quiet with a mild demeanor and not very active when they came into the Department's care; however, they are now very active and appear to be happy and engaging. Foster Mother testified the children were hard to redirect and not very verbal when they were initially placed with the foster family. Foster Mother stated "[i]t took a while for them to . . . warm up and start talking[,]" but after three months with the foster family they began to open up. Foster Mother testified:

> [The children] are all loveable now. They talk nonstop now. They are always happy, always have something to say. I mean, they are just . . . outgoing. They are ready to do everything. . . . They can tell you everything they have done all day long. They love telling you everything now.

The children are currently in therapy and M.J.A. is taking extra classes at school to catch up academically. P.I.Z. is working with Early Childhood Intervention to learn colors, work on basic speaking, and learn other basic activities such as feeding himself. *See S.D.*, 980 S.W.2d at 764 (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs"). Foster Mother stated she and her husband

are "fully committed to do whatever needs to be done" for the children and are willing to adopt all three children. *See In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.— San Antonio May 6, 2020, pet. denied) (mem. op.) (indicating evidence the child is "thriving in the current placement" in a "stable and nurturing environment with a planned adoption" supported the trial court's best-interest determination).

In contrast, Mother has not visited the children during the pendency of the case.[5] Pina opined the children are not bonded with Mother because they don't ask for Mother or speak of her. Pina stated: "When I ask them questions about mom and how they feel, they don't express any bond." Foster Mother stated M.J.A. is the only child that has asked about Mother, and he has only asked about her twice in the seven months the children have been placed with the foster parents.

In summary, the children were initially removed because Mother exhibited inadequate parenting skills that put her children in emotional and physical danger. The Department sought to address these concerns by providing Mother with services to improve her parenting skills. Mother exhibited minimal effort and failed to complete her services. Thus, Mother has not addressed the concerns that led to removal. In its oral pronouncement, the trial court expressed concern about the children's permanency and acknowledged that Mother has failed to take steps to achieve stability and permanency for her children. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (listing a parent's willingness to complete counseling, facilitate the Department's close supervision, and to effect positive environmental and personal change as factors to be considered in a best-interest determination); *see also In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding failure to comply with a service plan may support a finding that termination of parental rights is in

---

[5] We recognize Mother was incarcerated for nine months. Mother was also not permitted to see the children until the children's therapist recommended visitation. The children's therapist did not recommend visitation after Mother was released from jail.

the child's best interest). The trial court noted, on the other hand, the children are thriving with the foster family, and the foster parents have provided the children with a safe, stable home and are willing to adopt the children to provide the permanency they deserve.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

## CONCLUSION

The trial court's termination order is affirmed.

Irene Rios, Justice